**ALM CORPORATION, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION II, Respondent.**

**No. 91–3785.**

United States Court of Appeals, Third Circuit.

Argued June 25, 1992.

Decided Sept. 2, 1992.

---

James A. Geraghty (argued), Donohue & Donohue, New York City, for petitioner.

Benedict S. Cohen, Acting Deputy Asst. Atty. Gen., Scott J. Jordan (argued), Environmental Defense Section, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., Terry Sullivan, Office of Regional Counsel, U.S. E.P.A., Region II, New York City, and Steve Wolfson (argued), Office of General Counsel, U.S. E.P.A., Washington, D.C., for respondent.

Before BECKER, HUTCHINSON, and ALITO, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

Petitioner, ALM Corporation (ALM), asks us to review an order of the Administrator of the United States Environmental Protection Agency (EPA). The EPA's order affirmed an Administrative Law Judge's (ALJ's) assessment of fines in the amount of $19,500.00 against ALM for violations of the Toxic Substances Control Act (TSCA), 15 U.S.C.A. §§ 2601–2629 (West 1982 & Supp.1992). ALM argues that the Administrator and the ALJ abused their discretion because (1) the certification documents required by 19 C.F.R. § 12.121 are not "reports, notices, or other information" ALM must submit under 15 U.S.C.A. § 2614(3)(B); (2) the Customs Service's regulatory detainment and enforcement proce-

dures preclude EPA from separately enforcing those requirements under 15 U.S.C.A. § 2614(3)(B); and (3) ALM had the right to avoid the civil penalties by belatedly submitting accurate certification documents after EPA discovered ALM's violations. For the reasons stated below, we will deny the petition.

## II.

The underlying facts are not in dispute. During late 1985 and early 1986, ALM imported nine shipments of nylon and other plastic pellets, described on the invoices as nylon 6.6 chips polynil P–50 and delrin 100/107. These shipments entered the United States at the port of New York. The pellets are used for injection molding various consumer goods, including plumbing fixtures and kitchen utensils. The first shipment of pellets imported on October 10, 1985 by ALM was not accompanied by a certification stating either that the shipment complied with TSCA or that TSCA did not apply to the shipment. This certification is required by 19 C.F.R. § 12.121(a).[1] After learning of the lack of certification, EPA issued a notice of noncompliance to ALM on November 26, 1985. During the first five months of 1986, ALM imported six more shipments of pellets without the certification required by 19 C.F.R. § 12.-121(a). The Customs Service did not detain any of the shipments for lack of certification nor demand redelivery of the shipments because of noncompliance.

On June 23, 1986, EPA issued a Complaint, Compliance Order and Notice of Opportunity for Hearing to ALM. This initial complaint alleged that ALM had committed two violations of the reporting requirements of 19 C.F.R. § 12.121. After receiving EPA's complaint, ALM imported two more shipments of pellets in August of 1986, this time accompanied by certifications incorrectly stating that the shipments

were not subject to TSCA. EPA subsequently amended the complaint to include all nine of ALM's shipments. The amended complaint alleged that ALM had violated 15 U.S.C.A. § 2614 when it imported nine shipments of a "chemical substance," as that term was defined by 15 U.S.C.A. § 2602 and 40 C.F.R. § 710.2(h), without proper certification that each shipment complied with TSCA, and that ALM had imported two shipments falsely certifying that they were not subject to TSCA. The amended complaint proposed a penalty of $6,000.00 for each of the nine violations, resulting in a total proposed penalty of $54,000.00.

ALM denied having committed any violations, requested a hearing and moved to dismiss the complaint on the following grounds: (1) EPA is not authorized to enforce customs regulations; (2) the exclusive sanctions for failure to certify are refusal of entry and liquidated damages under the importer's surety bond; and (3) the pellets were not chemical substances within the meaning of TSCA. The EPA cross-moved for accelerated disposition on the question of ALM's liability.[2]

On November 30, 1989, the ALJ issued an order granting EPA's motion on the issue of liability based on her conclusions that the pellets were chemical substances subject to TSCA, that ALM's failure to file proper certifications as required by 19 C.F.R. § 12.121(a) constituted a failure to report within the meaning of 15 U.S.C.A. § 2614(3)(B), that civil penalties were assessable under 15 U.S.C.A. § 2615 and that EPA had enforcement authority under TSCA.

Since the parties were unable to agree on the amount of the penalty, the ALJ held an evidentiary hearing on May 2, 1990 to determine the amount of penalties that should be assessed. On August 30, 1990, the ALJ issued an initial decision assessing

---

1. The text of this section was the same in both 1985 and 1986, the years ALM was allegedly in non-compliance. *Compare* 19 C.F.R. § 12.-121(a) (1985) with 19 C.F.R. § 12.121(a) (1986). It remains unchanged. *See* 19 C.F.R. § 12.-121(a) (1992).

2. Accelerated disposition in accordance with the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation of Suspension of Permits, *see* 40 C.F.R. § 22.20 (1991), is comparable to a motion for summary judgment or, as in this matter, partial summary judgment.

the penalty at $2,500.00 for each of the seven entries unaccompanied by certification, and $1,000.00 for each of the two entries accompanied by false certifications that the imported materials were not subject to TSCA, resulting in a total penalty of $19,500.00.

ALM appealed the ALJ's decision to the Administrator on two of the grounds advanced in its original motion to dismiss: (1) that failure to certify compliance with TSCA in a customs entry does not constitute a failure to report under TSCA sections 2614 and 2615, and (2) that EPA is without authority to administer the governing customs regulations. In addition, ALM argued that its failure to submit certifications at entry was not an actionable violation of the customs regulations because it had not been afforded an opportunity to cure the defect, as the custom regulations allow, by belatedly filing a certification, especially in light of the fact that the importation of materials did not in and of itself violate TSCA.

On October 11, 1991, the Administrator issued a final decision and order affirming the ALJ's initial decision. ALM timely filed a petition for review of the Administrator's final order with this Court.

### III.

The Administrator had jurisdiction to assess TSCA penalties against ALM pursuant to 15 U.S.C.A. § 2615(a)(2), and to delegate the hearing and initial determination of the EPA's complaint against ALM to an ALJ pursuant to 40 C.F.R. § 22.04 (1991). We have jurisdiction to hear this petition for review of the final decision and order of the Administrator pursuant to 15 U.S.C.A. § 2615(a)(3), since petitioner ALM resides and transacts business within the Third Circuit.

The standard of review is set out in 5 U.S.C.A. § 706(2) (West 1977). Under that section, agency action may be set aside where it is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.* § 706(2)(A); *see Department of Navy, Military Sealift Command v. FLRA,* 836 F.2d

1409, 1410 (3d Cir.1988). Judicial review under this standard is particularly deferential to the agency's interpretation of a statute it administers:

> Judicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well settled principle of federal law.
>
> ... [Our prior] decisions mandate that when a court is reviewing an agency decision based on a statutory interpretation, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." If the agency interpretation is not in conflict with the plain language of the statute, deference is due. In ascertaining whether the agency's interpretation is a permissible construction of the language, a court must look to the structure and language of the statute as a whole. If the text is ambiguous and so open to interpretation in some respects, a degree of deference is granted to the agency, though a reviewing court need not accept an interpretation which is unreasonable.

*National R.R. Passenger Corp. v. Boston and Maine Corp.,* — U.S. —, — – —, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992) (citations omitted). Deference is required whether an agency is interpreting the statute directly in an enforcement proceeding or through a rule or regulation promulgated thereunder. *See, e.g., id.* (deference given to Interstate Commerce Commission's interpretation of Rail Passenger Service Act); *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291–92, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988) (deference given in part to Customs Service's regulation implementing and interpreting Tariff Act of 1930); *Air Courier Conf. of America/Int'l Comm. v. United States Postal Service,* 959 F.2d 1213, 1223 (3d Cir.1992) (court's holding strengthened by deference to Postal Service's long-standing interpretation of Postal Reorganization Act).

### IV.

A brief review of TSCA and the relevant federal regulations is helpful. TSCA was

enacted in 1976 to regulate and provide for federal oversight of the manufacture, processing, distribution, use and disposal of chemical substances and mixtures. *See* 15 U.S.C.A. § 2601. TSCA defines the term "manufacture" to include "import into the customs territory of the United States." *Id.* § 2602(7). Thus, requirements imposed on domestic manufacturers under TSCA, are imposed on importers as well. Section 2614 of TSCA, which lists the acts prohibited under TSCA, makes it unlawful for any person to "fail or refuse to ... submit reports, notices, or other information ... as required by [TSCA] or a rule thereunder." *Id.* § 2614(3)(B). Section 2615 of TSCA provides that "[a]ny person who violates a provision of section 2614 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation." *Id.* § 2615(a)(1) (in relevant part). Section 2615 further provides that EPA may assess civil penalties for a violation of section 2614 in an administrative order. *Id.* § 2615(a)(2)(A). The Secretary of the Treasury (Secretary) is empowered to refuse entry into the United States of "any chemical substance, mixture, or article containing a chemical substance or mixture" if it fails to comply with TSCA or any rule under TSCA. *Id.* § 2612(a)(1). The Secretary, in consultation with the Administrator, is authorized to issue regulations to administer the powers granted in 15 U.S.C.A. § 2612. *Id.* § 2612(b).

Pursuant to that authority, the Secretary, through the Customs Service, promulgated 19 C.F.R. §§ 12.118 through 12.127. Section 12.121 provides, in pertinent part:

§ 12.121 Reporting requirements.

(a) All chemical substances in bulk or mixtures. The importer of a chemical substance, imported in bulk or as part of a mixture, shall certify to the district director at the port of entry that the chemical shipment is subject to TSCA and complies with all applicable rules and orders thereunder, or is not subject to

TSCA. The importer, or his authorized agent, shall sign ... [the] statement of certification].....

. . . . . .

(b) Chemical substance or mixture as part of articles. Each importer of a chemical substance or mixture as part of an article shall meet the reporting requirements set forth in paragraph (a) of this section only if required by a rule or order under TSCA.

19 C.F.R. § 12.121(a), (b). This section requires an importer of a chemical substance to certify to the Customs Service either that each shipment complies with TSCA and all applicable rules and orders issued under TSCA, or that the shipment is not subject to TSCA. *Id.* § 12.121(a).[3] Thus, in order to comply with 19 C.F.R. § 12.121(a), an importer of chemical substances must provide a certification with each shipment. *Id.* These certifications must be signed by the importer or an authorized agent and must be filed with the Customs Service's district director at the port of entry of the shipment. *Id.*

## V.

■ The first issue we address is whether the EPA reasonably interpreted TSCA in concluding that the certification documents required by 19 C.F.R. § 12.121(a) are "reports, notices or other information" within the meaning of 15 U.S.C.A. § 2614(3)(B). Under subsection 2614(3)(B), a failure to submit any "reports, notices or other information" required by any TSCA rule is a prohibited act subject to penalties. 15 U.S.C.A. §§ 2614(3)(B), 2615. The ALJ concluded that certifications under 19 C.F.R. § 12.121 fall within the plain meaning of the phrase "reports, notices or other information."

On appeal, ALM argues that even though it did not submit the certification required by 19 C.F.R. § 12.121 for seven of the nine shipments and did not submit

---

**3.** Subsection (a) of the regulation covers generally all chemical substances, including the nylon pellets that are the subject of this proceeding. Subsection (b) would eliminate articles containing nylon, *e.g.*, fabrics, from the regulation's reporting requirements unless reporting was required by specific rule or order.

truthful certifications for the other two shipments, it did not violate section 2614(3)(B) because the required certification is not a "report, notice or other information" within the meaning of that section. In support of this argument, ALM points out that the term "report" is not defined under either TSCA or EPA regulations, and that a certification is simply a statement that the shipment complies with TSCA, and does not include any "information." ALM also argues that EPA's own policy statements indicate that individual chemical shipments are not subject to TSCA reporting requirements, but are rather subject to customs reporting requirements. Finally, ALM argues that we are not bound to defer to EPA's interpretation of the regulatory statute it is charged with administering because we are reviewing a customs regulation which is enforced not by EPA but rather by the Customs Service.

EPA says common sense dictates that an item required by a section entitled "Reporting Requirements" is a "report." EPA also argues that the certifications required by 19 C.F.R. § 12.121 provide information because they state that each chemical substance is being imported in compliance with TSCA and that the importer is not offering for entry a chemical substance in violation of TSCA. Finally, EPA asserts that a comparison of subsection (3) of 15 U.S.C.A. § 2614 with section 2614's other subsections demonstrates that Congress intended "reports, notices or other information" to have a broad meaning. EPA points out that these other subsections are limited in the scope of their coverage because they each apply only to specific sections of TSCA. *See* 15 U.S.C.A. §§ 2614(1), 2614(2), 2614(4). On the other hand, subsection 2614(3) is not limited in scope to any particular portion of TSCA, but instead contains a general prohibition against, *inter alia,* failing to submit any "reports, notices or other information" required by "this chapter or a rule thereunder." *Id.* § 2614(3). As discussed *supra,* 19 C.F.R. § 12.121 is a "rule thereunder" because it was promulgated pursuant to 15 U.S.C.A. § 2612(b). While other interpretations may be possible, EPA's interpretation of TSCA section

2614 is a permissible construction which this Court will uphold. *See National R.R. Passenger Corp.,* —— U.S. at ——–——, 112 S.Ct. at 1401–02. We therefore hold that EPA's interpretation of section 2614(3)(B) is a reasonable one and that section 2614(3)(B)'s reporting requirement includes the certifications required by 19 C.F.R. § 12.121.

## VI.

We next address ALM's argument that EPA had no authority to enforce 19 C.F.R. §§ 12.121 through 12.127 because they set forth Customs Service's detainment procedures subject to enforcement by the Customs Service. ALM correctly states that the Customs Service may detain shipments that do not comply with the certification requirements of 19 C.F.R. § 12.-121. This does not mean, however, that EPA has no authority to impose civil penalties upon violators of TSCA section 2614. *See* 15 U.S.C.A. § 2601(c) ("It is the intent of Congress that the Administrator [of EPA] shall carry out this Chapter [TSCA] in a reasonable and prudent manner."). Although 19 C.F.R. § 12.122(b)(3) provides that the Customs Service will detain shipments that fail to have the proper certification, and 19 C.F.R. § 12.123 describes the post-detention procedure, neither states that detention by Customs is the exclusive enforcement procedure for violations of the certification requirement in 19 C.F.R. § 12.-121.

EPA has always interpreted the TSCA penalty provisions and the Customs Service's detainment procedures as co-existing, independent enforcement mechanisms. Its reasoning is pragmatic. It is at least impractical and perhaps impossible for the Customs Service to identify every non-complying shipment at the port because of the large volume of imports and the inefficiency and inconvenience of physical searches of every import by Customs Service officials or importers. The certification requirements are a form of self-policing. When violations may not be discovered until after entry, as is the case here, a post-entry procedure for penalizing violators is

necessary. If we or the EPA were to conclude that the Customs Service's detainment procedures were the exclusive means of enforcing the certification requirements, violating importers would not be subject to civil penalties; such an interpretation is contrary to TSCA's purpose. EPA's consistent interpretation of TSCA to permit mutually supportive co-existence and interdependence between Customs Service and EPA enforcement procedures is shown by the following EPA policy statement, issued when the Customs Service's detention procedures were published as a proposed rule in 1980:

> Section [2615] of TSCA describes civil penalties and criminal penalties to be invoked in proper cases.... If an imported shipment does not comply with the Act, EPA will seek appropriate remedies under TSCA against persons responsible for the violations. These sanctions are in addition to those which may independently be prescribed for violation of the [Customs Service's regulations].

45 Fed.Reg. 79726 (1980). In addition, 19 C.F.R. § 12.118 provides:

> The importation into the customs territory of the United States of a chemical substance in bulk or as part of a mixture, or article *containing a chemical substance or mixture,* is governed by [TSCA] and by regulations issued under the authority of ... TSCA (15 U.S.C. § 2612(b)) by the Secretary of the Treasury in consultation with the Administrator....

19 C.F.R. § 12.118 (1986). We hold that EPA reasonably interprets the TSCA and its regulations as giving EPA the authority to impose TSCA civil penalties under section 2615 for failure to certify a shipment as required by 19 C.F.R. § 12.121, even though that shipment was also subject to the Custom Service's detainment procedures. Therefore, ALM cannot succeed in its petition for review on this particular ground.

■ Additionally, ALM argues that its violations were harmless, since the materials it imported in the violating shipments actually did comply with TSCA, and that if the Customs Service had "done its job," ALM could have been alerted to the need for submitting its certification and therefore complying with TSCA. The main purpose of the reporting requirements of section 2614 of TSCA is ensuring compliance with import restrictions. In order to achieve that goal, federal regulations require self-monitoring by importers. *See* 19 C.F.R. pt. 12. ALM failed to monitor itself. It therefore violated TSCA's reporting requirements, even if it did not violate any restrictions on importing the substances themselves. Whether the materials in the shipments themselves violated TSCA's import restriction is irrelevant in this proceeding. The penalty is not imposed to redress a particular injury but to ensure self-monitoring among importers. EPA's interpretation of its statutory power to enforce TSCA, though broad, is not unreasonable.

### VII.

■ Finally, ALM asserts that it should have been given a chance to cure its TSCA violations by submitting the certifications after EPA notified it of its violations. ALM has presented no authority to support that argument. Furthermore, such a right to rectify would defeat the self-enforcement purpose of the certification requirement by allowing importers to ignore the certification requirements and, if discovered, belatedly submit certification without penalty for their initial violation. This would be likely to encourage non-compliance. ALM cannot succeed on this ground.

### VIII.

For these reasons, we will deny ALM's petition for review of the EPA's order. An appropriate order will be entered.